IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OSVALDO PUMBA, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 22-134 |
| | : | |
| v. | : | |
| | : | |
| LEHIGH COUNTY JAIL ADMINISTRATION, ROBERT MCFADDEN, SAL MADRID, DARREN MCFADDEN, DREW KALINASKI, JANIN DONATTE, DILLYN MIJEVIC, HORNE, TARALYNA GONZALEZ, and AMANDA MEAD VOLPE, | : : : : : : : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                          April 29, 2022

   The *pro se* plaintiff, a convicted and sentenced prisoner in a county jail, has sought leave to proceed *in forma pauperis* in an action under 42 U.S.C. § 1983 against various defendants associated with the jail. He alleges that one of the defendants, a correctional officer at the jail, violated his Eighth and Fourteenth Amendment rights when he sexually harassed and sexually assaulted him while he was showering. He also asserts that because he called for help during the assault, this correctional officer deprived him of the meals already in his cell and did not allow him another meal until the following day at noon.

   Regarding his other claims, the plaintiff asserts that another correctional officer handcuffed him and assaulted him on a different date. He also alleges that another correctional officer failed to get him medical attention when he asked for it after he suffered injuries during the assault. He further alleges that he complained about the assaults to other individuals at the jail, but nothing was done regarding his complaints.

After reviewing the *in forma pauperis* application and screening the complaint, the court will permit the plaintiff leave to proceed *in forma pauperis*. The court will also allow the plaintiff's claims for violations of his Eighth Amendment rights relating to the assaults and his deliberate indifference claim for the failure to get him medical aid to proceed, but the court will dismiss all other claims in the complaint without prejudice. The court will provide the plaintiff with the opportunity to fix the claims dismissed without prejudice by filing an amended complaint. Alternatively, the plaintiff may inform the court that he intends to proceed with only those claims that have passed statutory screening.

## I. ALLEGATIONS AND PROCEDURAL HISTORY

On January 10, 2022, the clerk of court docketed an application for leave to proceed *in forma pauperis* and a complaint filed by the *pro se* plaintiff, Osvaldo Pumba ("Pumba"). *See* Doc. No. 1, 2. On January 28, 2022, this court denied the *in forma pauperis* application without prejudice to Pumba refiling a new application along with a prisoner trust fund account statement as required by 28 U.S.C. § 1915(a)(2). *See* Jan. 28, 2022 Order at 2–3, 7, Doc. No. 4.[1] Pumba complied with the court's order by filing a new application for leave to proceed *in forma pauperis* (the "IFP Application") and a prisoner trust fund account statement, both of which the clerk of court docketed on February 7, 2022. *See* Doc. Nos. 5, 6.

In the complaint, Pumba has identified the following defendants: (1) the Lehigh County Jail Administration; (2) Robert McFadden, "Deputy Warden of Security" ("Deputy McFadden"); (3) correctional officer Sal Madrid ("C.O. Madrid"); (4) Darren McFadden, "Warden of Security"

---

[1] Pumba has also filed five other complaints in this court. *See Pumba v. Lehigh Cnty. Jail, et al.*, Civ. A. No. 21-5585, Doc. No. 2; *Pumba v. Madrid, et al.*, Civ. A. No. 21-5639, Doc. No. 2; *Pumba v. Lehigh Cnty. Jail Admin., et al.*, Civ. A. No. 22-137, Doc. No. 2; *Pumba v. Lehigh Cnty. Jail Admin., et al.*, Civ. A. No. 22-179, Doc. No. 2; *Pumba v. Maldonado, et al.*, Civ. A. No. 22-476, Doc. No. 3. This order also addressed Pumba's *in forma pauperis* applications in four of those cases.

("Warden McFadden"); (5) Sergeant Drew Kalinaski ("Sergeant Kalinaski"); (6) Janine Donate, Director of Lehigh County Jail ("Director Donate");[2] (7) correctional officer Dillyn Mujevic ("C.O. Mujevic"); (8) Sergeant Taralyna Gonzalez ("Sergeant Gonzalez"); (9) Sergeant Amanda Mead Volpe ("Sergeant Volpe"); and (10) correctional officer Horne ("C.O. Horne"). *See* Compl. at ECF pp. 1, 2, Doc. No. 2. All the named defendants are associated with the Lehigh County Jail, the location where Pumba, a convicted and sentenced inmate, allegedly had his constitutional rights violated on two occasions in 2021. *See id.* at ECF pp. 4–5.

The first occasion allegedly occurred on May 21, 2021. *See id.* at ECF pp. 4, 5. On this date, Pumba alleges that he was showering when C.O. Mujevic opened his shower curtain to stare at him. *See id.* at ECF p. 4. C.O. Mujevic then made sexually explicit comments, such as "[i]f I come to the shower where you at I don't know if I am going to be taken [sic] or given [sic] it." *Id.* C.O. Mujevic then stared at Pumba's penis and made additional comments about it. *See id.* C.O. Mujevic proceeded to grab Pumba's penis and "touch[] [him] in improper ways intentionally or knowingly caus[ing] sexual abuse and sexual harassment."[3] *Id.* at ECF p. 5. Pumba then screamed for help, and when he did, C.O. Mujevic threatened to throw away Pumba's food. *See id.*

Later that day, C.O. Mujevic and C.O. Horne allegedly went to Pumba's cell to throw away his lunch and dinner.[4] *See id.* at ECF p. 4. Pumba did not receive another meal until noon on the following day. *See id.* Pumba notified Sergeant Gonzalez and Sergeant Volpe about the incident with C.O. Mujevic and that he was deprived of his meals. *See id.* Sergeant Gonzalez and Sergeant

---

[2] Pumba misspelled Director Donate's name in the complaint. *See* Compl. at ECF p. 1, Doc. No. 2. The court will use the correct spelling of the Director's last name.
[3] Pumba asserts that C.O. Mujevic violated the Lehigh County Jail's policy of "zero tolerance" for sexual abuse and sexual harassment. *See* Compl. at ECF p. 5.
[4] Pumba states that "[h]e has done this act multiple times," although it is unclear to the court to whom Pumba is referring as the prior sentence mentions C.O. Mujevic and C.O. Horne and what "act" was done multiple times, even though it is quite possible Pumba is referring to the throwing away of his food. *See* Compl. at ECF p. 4.

Volpe allegedly told Pumba that they would report the incident, but they did not. *See id.* at ECF pp. 4, 5.

The second occasion described in the complaint occurred on October 29, 2021. *See id.* at ECF p. 5. On this date, Pumba asserts that C.O. Madrid assaulted him. *See id.* Pumba alleges that, while handcuffed, C.O. Madrid slammed him to the floor, which caused Pumba to suffer a fractured ankle and bloody wrist. *See id.* Later that evening, Pumba asked Sergeant Kalinaski for medical assistance, but Sergeant Kalinaski refused to call the nurses. *See id.* Pumba allegedly also notified Warden McFadden and Director Donate; however, "nothing was done." *Id.*

Based on the allegations surrounding these two incidents, Pumba asserts claims under 42 U.S.C. § 1983 based on violations of his Eighth and Fourteenth Amendment rights.[5] *See id.* He seeks $1 million in damages. *See id.*

## II.   DISCUSSION

### A.   The IFP Application

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch[ v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in

---

[5] Although the complaint mentions the Fourteenth Amendment, the Eighth Amendment is the applicable provision here because Pumba is a convicted and sentenced inmate. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Nothing in the complaint suggests a basis for a claim under the Fourteenth Amendment.

4

      [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (per curiam) (footnote omitted).

      The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must] review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

      Here, after reviewing the IFP Application, it appears that Pumba is unable to prepay the fees to commence this civil action. Therefore, the court will grant him leave to proceed *in forma pauperis*.[6]

      **B.**    <u>**Standard of Review – Screening of Complaint Under 28 U.S.C. § 1915**</u>

      Because the court has granted Pumba leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is

---

[6] As Pumba is a prisoner, he must fully pay the filing fee in installments due to the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Shorter v. United States*, No. 20-2554, 2021 WL 3891552, at *5 (3d Cir. Sept. 1, 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro*

6

*se* plaintiff's] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Yet, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

Additionally, when construing a *pro se* plaintiff's complaint, the court will "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). However, *pro se* litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

### C. Analysis

Pumba is seeking relief in this case under 42 U.S.C. § 1983. This statute provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color

of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

### 1. Claims Against the Lehigh County Jail Administration

Pumba names the "Lehigh County Jail Administration" as a defendant. It is unfortunately unclear to the court who the Lehigh County Jail Administration is and why Pumba names it as a defendant in this case. Pumba does not include any specific allegations in the complaint that would explain the personal involvement of this defendant in the events giving rise to his claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (explaining that, to be liable, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs").

In addition, the absence of any specific allegations about the Lehigh County Jail Administration warrants dismissal of this defendant under Rule 8 of the Federal Rules of Civil Procedure. Rule 8 requires pleadings to contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *see Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) ("Under Rule 8(a)(2), a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2))); *Travaline v. U.S. Supreme Ct.*, 424 F. App'x 78, 79 (3d Cir. 2011) (per curiam) ("Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' and 'a demand for the relief sought.'" (quoting Fed. R. Civ. P. 8(a)(2), (3))). To determine whether a pleading satisfies Rule 8's "plain" statement requirement, the court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims."

*Garrett*, 938 F.3d at 93 (citation omitted). The paramount consideration for the court is whether "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94 (citations omitted). Since Pumba has failed to allege any facts about the Lehigh County Jail Administration's involvement in his alleged constitutional harm, he has failed to state plausible claims against it. Accordingly, the court will dismiss without prejudice Pumba's claims against the Lehigh County Jail Administration.

### 2. Sexual Abuse Claim Against C.O. Mujevic

The court understands Pumba to be asserting an Eighth Amendment claim for sexual abuse and harassment against C.O. Mujevic. Sexual abuse and harassment violate an inmate's rights under the Eighth Amendment, which prohibits cruel and unusual punishment. *See* U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) ("Today, we join numerous sister Circuits in holding that prison sexual abuse can violate the Constitution." (citations omitted)). Claims for sexual abuse and harassment are evaluated similarly to excessive force claims in that the prisoner must allege facts plausibly establishing both objective and subjective components. *See id.* at 475 ("[W]e conclude that the test will turn on an analysis of a subjective and an objective component. That is, the incident must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind."). Regarding the subjective component, the court "consider[s] whether the official had a legitimate penological purpose or if he or she acted 'maliciously and sadistically for the very purpose of causing harm.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). Concerning the objective component, the court considers whether the defendant's action is "repugnant to the conscience of mankind" or whether it is "sufficiently serious or severe." *Id.* at

475, 477 (citations omitted). Also, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

Here, Pumba states a plausible cause of action under the Eighth Amendment for sexual abuse against C.O. Mujevic. Pumba alleges that Mujevic stared at Pumba in the shower, made sexual statements to him, grabbed Pumba's penis, and then threatened to withhold food from Pumba when Pumba called for help. *See* Compl. at ECF pp. 4, 5. These alleged facts plausibly state both the objective and subjective components of a sexual abuse claim. Therefore, the court will permit Pumba to proceed on his sexual abuse claim against C.O. Mujevic.[7]

### 3. Deprivation-of-Food Claims Against C.O. Mujevic and C.O. Horne

Pumba alleges that he was deprived of three consecutive meals in violation of the Eighth Amendment. In general, "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Regarding the first prong, necessities include food, clothing, shelter, medical care, and reasonable safety. *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000) ("[W]hen the government takes a person into custody against his or her will, it assumes responsibility for satisfying basic human

---

[7] Although the court will permit the sexual abuse and harassment claim against C.O. Mujevic to proceed, the claim is based on facts that are alleged to violate the Eighth Amendment. Pumba may not base his claims on C.O. Mujevic's alleged violation of the Lehigh County Jail handbook because a prison official's failure to abide by prison policy does not constitute an independent basis for a constitutional claim. *See Bowman v. Wetzel*, Civ. A. No. 2:20-cv-135, 2020 WL 3258946, at *6 (W.D. Pa. June 16, 2020) ("As many courts have held, corrections officials cannot be held liable for failing to conform to procedures outlined in inmate handbooks and other internal prison procedures."); *see also Laufgas v. Speziale*, Civ. A. No. 04-cv-1697 (PGS), 2006 WL 2528009, at *9 (D.N.J. Aug. 31, 2006) ("[A] prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983.").

needs such as food, clothing, shelter, medical care, and reasonable safety." (citing *DeShaney v. Winnebago Co. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989))). As for the second prong, a prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

"Under the Eighth Amendment, prisoners are entitled to a nutritionally adequate diet." *Tapp v. Proto*, 718 F. Supp. 2d 598, 621 (E.D. Pa.), *aff'd* 404 F. App'x 563 (3d Cir. 2010). To allege that a defendant unconstitutionally deprived them of food, a prisoner must allege "both an objective component (that the deprivation was sufficiently serious) and a subjective component (that the officials acted with a sufficiently culpable state of mind)." *Duran v. Merline*, 923 F. Supp. 2d 702, 720 (D.N.J. 2013) (citing *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007)). Whether the deprivation of food is objectively serious for purposes of establishing a constitutional violation "depends on the amount and duration of the deprivation." *Id.* at 720 (quoting *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)). *Compare Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009) ("The purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation."), *with Cooper v. Sheriff, Lubbock Cnty., Tex.*, 929 F.2d 1078, 1083 (5th Cir. 1991) (finding that failure to fee a prisoner for twelve days violated the Eighth Amendment). "[O]nly a substantial deprivation of food to a prisoner" states a viable Eighth Amendment claim. *Rieco v. Moran*, 633 F. App'x 76, 78 (3d Cir. 2015) (per curiam) (quoting *Lindsey*, 327 F. App'x at 321).

In this case, Pumba alleges that on May 21, 2021, C.O. Mujevic and C.O. Horne "went to [his] cell to thrown [his] lunch [and] dinner away." Compl. at ECF p. 4. He further alleges that he

11

was not provided with another meal until noon the following day. *See id.* While these allegations are almost sufficient, they lack the necessary detail to push Pumba's claim past the threshold for plausibility. For instance, Pumba does not state whether he had eaten any part of the lunch and dinner that was removed from his cell. He also does not state whether he was deprived of food completely, such as food he could have purchased from a commissary. He further fails to allege how long he was deprived food in general, and if he was harmed by the deprivation. Thus, Pumba's allegations as pleaded are insufficiently serious to state a plausible Eighth Amendment claim. *See Zanders v. Ferko*, 439 F. App'x 158, 160 (3d Cir. 2011) (per curiam) (concluding that "the alleged deprivation of three meals over two days [to a diabetic inmate] fails to rise to the level of a constitutional violation"); *Garrett v. Gonzalez*, 588 F. App'x 692 (9th Cir. 2014) (affirming district court's dismissal of Eighth Amendment claim where *pro se* plaintiff failed to allege sufficient facts showing that deprivation of three consecutive meals "resulted in any pain or injury to his health" (citations omitted)); *Adderly v. Harry*, Civ. No. 3:CV-13-1465, 2015 WL 5016501, at *4 (M.D. Pa. Aug. 21, 2015) (concluding that deprivation of lunch for one day and breakfast and lunch the following day failed to state plausible Eighth Amendment claim). Therefore, the court will dismiss without prejudice Pumba's deprivation-of-food claims against C.O. Mujevic and C.O. Horne.

### 4.    Claims Against Sergeant Gonzalez and Sergeant Volpe

Pumba does not specify the basis for his claims against Sergeant Gonzalez and Sergeant Volpe. Instead, Pumba merely alleges that he notified them about C.O. Mujevic's assault and that his meals were taken from him, but that they "ignored" him and "refused" to report the incidents. *See* Compl. at ECF p. 5. Thus, it appears that he is claiming, if anything, that these defendants violated his constitutional rights by failing to properly investigate his complaint or process his grievance. If this is in fact Pumba's claim against these defendants, he has failed to state a plausible

claim because a failure to investigate an inmate's complaint or process a grievance does not give rise to an independent constitutional violation. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (per curiam) ("[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process, *see Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991), . . . based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances."); *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) ("[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." (quoting *DeShaney*, 489 U.S. at 195–96)).

Furthermore, Sergeant Gonzalez and Sergeant Volpe's alleged failure to address Pumba's complaints does not provide a basis for concluding that they were personally involved in the underlying events that give rise to Pumba's constitutional claims. *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (per curiam) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) ("The District Court properly determined that Defendants [Superintendent] Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."). Pumba has also not alleged that these defendants maintained an unconstitutional policy or custom or knowingly acquiesced in their subordinates' unconstitutional conduct so as to state a claim based on a theory of supervisory liability.[8] *See Barkes v. First Corr.*

---

[8] If a plaintiff seeks to hold a supervisor liable for the unconstitutional acts by subordinates, there are two theories of supervisory liability: (1) "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and (2) "[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted). Generalized allegations that a supervisory defendant is

*Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim), *rev'd on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015).

As a final note, the court has considered whether Pumba is asserting that Sergeant Gonzalez and Sergeant Volpe failed to intervene and protect him against C.O. Mujevic. To the extent Pumba is asserting such a claim, it is also implausible.

A correctional officer's failure to intervene can serve as a basis for Eighth Amendment liability under section 1983 if the officer "has a reasonable opportunity to intervene and simply failed to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). Nonetheless, "an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Id.* at 651.

Here, Pumba does not allege facts showing that Sergeant Gonzalez and Sergeant Volpe had a reasonable opportunity to intervene and stop C.O. Mujevic's alleged sexual misconduct. Instead, it appears Pumba reported the incident to these two sergeants after the fact. Thus, he has failed to state a claim based on a failure to intervene. *See Ricks*, 891 F.3d at 479 (affirming district court's dismissal of failure to intervene claim against prison officer who did not intervene in alleged sexual assault because "the alleged violation was over before" prison officer's assistance was sought).

In sum, Pumba has not alleged a plausible basis for any claim under section 1983 against Sergeant Gonzalez and Sergeant Volpe. Accordingly, the court will dismiss any claims Pumba has asserted against them.

---

"in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (per curiam) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))).

### 5. Excessive Force Claim Against C.O. Madrid

Pumba alleges that when he was handcuffed on October 29, 2021, C.O. Madrid slammed him to the floor, causing him to suffer a fractured ankle and a bloody wrist. *See* Compl. at ECF p. 5. The court understands these allegations as showing that Pumba is asserting an excessive force claim under the Eighth Amendment against C.O. Madrid.

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992) ("The objective component of an Eighth Amendment claim is therefore contextual and responsive to 'contemporary standards of decency.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976))). When screening an Eighth Amendment excessive force claim under section 1915, the court asks whether the prisoner has plausibly alleged that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." *Jackson v. Bueno*, Civ. A. No. 20-687, 2020 WL 2847925, at *3 (E.D. Pa. June 2, 2020) (quoting *Hudson*, 503 U.S. at 7)). Further,

> [t]he factors used to determine whether the force applied was excessive include: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Although the extent of an inmate's injuries is relevant to an Eighth Amendment analysis, "there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force." *Id.* at 104. Thus, the inquiry must be driven by the extent of the force and the circumstances in which it is applied, not by the resulting injuries. *Id.* at 108; *see also Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002). The Eighth Amendment does not protect against a de minimis use of physical force, so long as it is not of a sort "repugnant to the conscience of mankind." *Brooks*, 204 F.3d at 107 (quoting *Hudson*, 503 U.S. at 9-10).

*Id.*

15

In this case, Pumba has stated a plausible excessive force claim under the Eighth Amendment against C.O. Madrid. Therefore, the court will direct that this claim proceed and that service is effected so that C.O. Madrid may file a responsive pleading.

### 6. Deliberate Indifference Claim Against Sergeant Kalinaski

Pumba alleges that Sergeant Kalinaski refused him medical treatment for the fractured ankle and bloody wrist he suffered during the incident with C.O. Madrid. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *Farmer*, 511 U.S. at 835. A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

A plaintiff properly alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Here, Pumba has included sufficient allegations to support a plausible deliberate indifference claim against Sergeant Kalinaski. Liberally construing the complaint in Pumba's favor, as the court is required to do at this stage in the case, Pumba's need for medical treatment was obvious and Sergeant Kalinaski simply refused to call the nurses despite Pumba's request. Thus, Pumba will be permitted to proceed on his deliberate indifference claim against Sergeant Kalinaski.

### 7. Claims Against Director Donate, Deputy McFadden, and Warden McFadden

Pumba also appears to be attempting to assert section 1983 claims against Director Donate, Deputy McFadden, and Warden McFadden. *See* Compl. at ECF pp. 1, 2. Yet, he fails to clearly state the basis for his claims against these defendants. In this regard, there are no allegations at all about Deputy McFadden and no grievances involving him are attached to the complaint. As for Warden McFadden, Pumba merely alleges that he "wrote to him" about C.O. Madrid's "assault[]" but "nothing was done."[9] *Id.* at ECF p. 5; Doc. No. 2-1 at ECF p. 3. Regarding Director Donate, Pumba alleges that he notified her about C.O. Madrid's "assault[]" so that she could "address the situation" but she "denied" his request.[10]

As already noted, individuals must have personal involvement in the unconstitutional conduct to be liable. *See Rode*, 845 F.2d at 1207. Pumba has failed to allege that Director Donate, Warden McFadden, or Deputy McFadden were personally involved in his alleged constitutional harm. Generalized allegations that a supervisory defendant is "in charge of" or "responsible for"

---

[9] The court understands Pumba to be referring to Warden McFadden's November 4, 2021 response to his grievance, wherein he states, "[y]our request slip has been received and will be reviewed. Any inappropriate actions by staff will be addressed. We need you to follow staff's direction and follow facility rules." Doc. No. 2-1 at ECF p. 3.

[10] None of the grievances and grievance responses attached to the complaint involve Director Donate. *See* Doc. No. 2-1 at ECF pp. 1–3.

an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi*, 822 F. App'x at 48.

Pumba has also failed to allege a basis for supervisory liability against these defendants. He has not alleged that these defendants acted "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes*, 766 F.3d at 316 (alteration in original) (quoting *A.M.*, 372 F.3d at 586). He further has not alleged that the defendants "participated in violating [his] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

To the extent that Pumba's claims against Director Donate and Warden McFadden are based on their alleged failure to respond adequately to grievances he filed, the claims are also implausible. As noted above, a prison official's involvement in the grievance process, alone, is not actionable under section 1983. *See Folk*, 741 F. App'x at 51; *Curtis*, 763 F. App'x at 263. Moreover, since there is no right to a grievance process, Pumba cannot state an independent claim based on the handling of his grievances. *See Woods*, 446 F. App'x at 403. Accordingly, the court will dismiss Pumba's claims against Director Donate, Warden McFadden, and Deputy McFadden.

### III. CONCLUSION

For the foregoing reasons, the court will grant the IFP Application and will dismiss the following claims without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii): (1) the claims against the Lehigh County Jail Administration; (2) the deprivation-of-food claims against C.O. Mujevic and C.O. Horne; (3) the claims against Sergeant Gonzalez and Sergeant Volpe; and (4) his claims against Director Donate, Warden McFadden, and Deputy McFadden. Pumba's sexual abuse claim against C.O. Mujevic, his excessive force claim against C.O. Madrid, and his deliberate

indifference claim against Sergeant Kalinaski pass statutory screening and will be served for a responsive pleading. As for the claims the court is dismissing without prejudice, because the court cannot say at this time that Pumba cannot cure the defects in these claims, the court will grant Pumba the option of filing an amended complaint to attempt to cure the defects in those claims or advise the court that he seeks to proceed only on the claims that have passed statutory screening.[11]

    The court will enter a separate order.[12]

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[11] A district court should generally provide a *pro se* plaintiff with leave to amend unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). Also, "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

[12] This order will provide further instruction about Pumba's options for proceeding.